UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JULIAN BROOKS,

    Petitioner,

v.

Case No. 2:08-CV-13188
HONORABLE GERALD E. ROSEN
CHIEF UNITED STATES DISTRICT JUDGE

THOMAS BELL,

    Respondent,

_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING CERTIFICATE OF APPEALABILITY

### I. Introduction

Petitioner, Julian Brooks, was convicted following a jury trial in Wayne Circuit Court of first-degree murder, MICH. COMP. LAWS, 750.316, assault with intent to commit an armed robbery, MICH. COMP. LAWS 750.89, felon in possession of a firearm, MICH. COMP. LAWS 750.224f, and possession of a firearm during the commission of a felony, MICH. COMP. LAWS 750.227b. Petitioner's pro se petition for writ of habeas corpus, filed under 28 U.S.C. §2254, asserts that he is being held in custody at a Michigan correctional facility in violation of his constitutional rights. For the reasons that follow, the Court will deny the petition.

### II. Background

The charges against Petitioner arose from the shooting death of Eric Clark in a Detroit alley. The prosecutor's theory at trial was that Petitioner and two other men, David Edwards and Morris Howard, shot and killed Clark during a failed attempt to rob him.

1

Petitioner made a statement to police following his arrest, and he repeated the substance of this statement at a guilty plea hearing and when he testified at his trial. Petitioner stated that Edwards came to his house and told him that he had unsuccessfully attempted to rob Clark. Edwards had flattened the tires on Clark's truck, so he knew that Clark was stranded in the area. Edwards asked Petitioner if would help him make another attempt to rob Clark. Petitioner at first refused but then reluctantly decided to accompany Edwards, and at some point Petitioner agreed to serve as the look-out. On their way, the pair ran into Morris Howard. Edwards told Howard about the failed attempt, and Howard told him that he would show them how to commit the robbery. Edwards gave Howard his gun.

After circling the area where Clark was working on his tires, Howard proceeded down the alley. Petitioner told the police that he followed Howard down the alley, but when he was about fifteen feet away from Clark, he had a change of heart and stopped. Howard ran up to Clark and demanded money. When Clark refused, Petitioner claims that Howard shot him twice. Howard then gave the gun to Petitioner and ran away. Petitioner stood over Clark, asked him if he was alright, but then Edwards arrived and told him to run. Petitioner gave Edwards his gun back, and then ran away.

Petitioner entered into a plea bargain whereby he agreed to plead guilty to second-degree murder and commission of a felony with a firearm in exchange for testifying against Edwards and Howard. At the plea hearing, Petitioner testified about his involvement in the crime consistently with his statement to police - essentially describing Edwards as the one who planned the robbery and Howard as the one who shot the victim.

But when Petitioner was called as a witness at Edwards and Howard's trial, he

denied that he was in the alley during the commission of the crime, and he denied any knowledge that Edwards or Howard were responsible for the crime. On cross-examination, he stated that the statements he made to the police and at the plea hearing were lies.

Not surprisingly, the trial court set aside the plea on the grounds that Petitioner "did not live up to the plea agreement," Tr 7/25/2005, at 3, and Petitioner was brought to trial on the original charges.

At Petitioner's trial, Venessa Mathis testified that during the afternoon of December 30, 2004, she was in her house across from the scene of the shooting. She saw ArIrene Johnson outside, who told her that some man had just tried to rob Clark. About twenty minutes later, Mathis heard gunshots, and heard Johnson scream for help and for someone to call 9-1-1 because Clark had been shot. Mathis looked out her window and saw two men running away from the scene. Mathis called 9-1-1.

Johnson had spent the day with Clark. She testified that before the shooting she saw a person she knew as "David" pull a gun on Clark. Clark ran and hid in a garage, and eventually David left. After a time, Clark and Johnson went back outside and saw that two of the tires on Clark's truck were flat. Clark started to jack up his truck to fix one of the flat tires and told Johnson to stay and watch his back. A short time later, Johnson saw two men coming towards Clark in the alley. Johnson tried to warn him, but Clark was talking to someone on his cell phone.

Johnson testified that the men ran past her and towards Clark. David was not one of the men, but she recognized Petitioner from the neighborhood as one of the two men. Johnson saw the man she did not know strike Clark with a pistol and demand money. Clark replied that he did not have any money and started to back away. That man then

3

shot Clark once. Johnson saw Petitioner take the gun from the man, and he fired another round into Clark. Johnson admitted that she was high on crack cocaine when all this occurred. The police arrived about twenty-minutes later and found Clark non-responsive. Johnson gave a description of the perpetrators to the police.

Thomas Brinker testified that Clark was his best friend. He stated that he was on the phone with Clark several times on the day of the shooting. During one call, Clark told Brinker that someone had tried to rob him and that he had two flat tires. Against his advice, Clark decided to attempt to fix his truck himself and get it out of the alley. During a later phone conversation, Brinker heard kids coming up to Clark, and he heard Clark say to them "what do you guys want? I already gave you everything I've ever had. What else can you take from me?" Brinker then heard gun shots and heard Clark cry out in pain. Clark said over the phone: "Tommy, I've been shot. Please hurry." Brinker then heard indistinct voices and heard what sounded like someone ruffling through clothing.

Detroit Police Investigator Joseph Rocha testified that Petitioner was one of his informants. On Jaunary 14, 2005, Petitioner called Rocha and asked for a ride to the homicide section. Edwards and Howard were already in police custody. On the way to the police station, Petitioner told Rocha about the incident. He described how he reluctantly went along but eventually backed-out. He told Rocha that Edwards had planned the robbery and that Howard had shot Clark. Petitioner repeated this version of events to homicide detective Frazer Adams. Petitioner's statement to Adams was read into the record at trial.

Daniel Bizovi shared a cell with Petitioner in jail. He testified that he had arranged a deal to receive information about other cases while he was in jail. Bizovi described

several incriminating statement that Petitioner made to him, including the fact that he fired one of the shots and his partner fired the other, and that the plan was to kill Clark after the robbery.

At the close of the prosecutor's proofs, defense counsel stated on the record that he had advised Petitioner of his right to remain silent and that he had recommended to Petitioner that he should not testify. Tr. III at 80-82. The trial court inquired whether Petitioner was informed that "every statement that he has ever made in court under oath could be used against him. . . primarily the plea proceeding." Id. Petitioner indicated his understanding, but he nevertheless decided that he wished to testify in his own defense. Id.

Petitioner's direct-examination testimony largely tracked his statement to police and his testimony at the guilty plea hearing, and he described his meeting with Rocha. He testified that at the time of co-defendants' trial, he had received threats and was afraid that if he testified against them, harm would come to himself and his family.

On cross-examination, the prosecutor challenged Petitioner's credibility by asking about the various times he lied under oath. Petitioner admitted that he lied at the prior trial, and then the prosecutor asked "what about when you pled guilty?" Trial Tr. III at 103. Later during the cross-examination, the prosecutor used potions of Petitioner's guilty plea testimony to impeach Petitioner's trial testimony. Trial Tr. III, at 153-160.

Also on cross-examination, Petitioner admitted that: (1) he agreed to be a look-out so that the robbery could be committed; (2) he wore a mask to hide his identity; (3) he knew the robbery would be accomplished using a gun; (4) he knew he could have walked-away but made a decision to walk down the alley with Howard; (5) he started to walk down

the alley with Howard for the purpose of committing the robbery; (6) he left the alley with the murder weapon; (7) he did nothing to aid Clark or seek help her him; and (8) he expected to receive some of the proceeds from the robbery. Petitioner denied that he took the gun from Howard and also shot Clark, but he could offer no explanation for Johnson's testimony that he did.

Following arguments, instructions, and deliberations, the jury returned a verdict of guilty on all counts. The trial court subsequently sentenced Petitioner as indicated above.

Petitioner filed an appeal of right in the Michigan Court of Appeals. His appellate briefs raised three claims:

> I. The convictions and sentences for both felony-murder and the underlying felony, assault with intent to commit armed robbery are violative of double jeopardy protections.
>
> II. Mr. Brooks was denied his Sixth Amendment right to a fair trial by impartial jury and his Fourteenth Amendment right to due process by the admission of evidence that he had previously pleaded guilty to this offense and had other criminal convictions.
>
> III. Defendant was denied his Fourth Amendment constitutional right to be free from unreasonable arrests, searches and seizures where arresting officer did not have probable cause to arrest defendant who was merely turning himself in for questioning, the use of evidence should have been suppressed as an illegal arrest in violation of his state and denial constitutional rights also where the trial court erred in denying the motion to quash the case again violating defendant's right to free from unreasonable arrest, searches and seizures.

The Michigan Court of Appeals agreed with Petitioner's first claim and ordered that Petitioner's assault conviction be vacated. The Court denied Petitioner relief with respect to his other two claims. *People v. Brooks*, 2007 Mich. App. LEXIS 1018 (Mich. Ct. App. Apr. 17, 2007). Petitioner filed an application for leave to appeal in the Michigan Supreme

Court and raised the same claims that had been presented to the Michigan Court of Appeals. The Michigan Supreme Court denied leave to appeal. *People v. Hawkins,* 738 N.W.2d 722 (Mich. 2007).

Petitioner then filed the instant petition for writ of habeas corpus in which he raises the same claims that he presented to the state courts during his direct appeal.

### III. Standard of Review

Review of this case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Pursuant to the AEDPA, Petitioner is entitled to a writ of habeas corpus only if he can show that the state court's adjudication of his claims on the merits-

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Simply stated, under section 2254(d), Petitioner must show that the state court's decision "was either contrary to, or an unreasonable application of, [the Supreme] Court's clearly established precedents, or was based upon an unreasonable determination of the facts." *Price v. Vincent*, 538 U.S. 634, 639 (2003).

A state court's decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set

7

of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). A state court's decision is an "unreasonable application of" clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 413. A state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding, § 2254(d)(2)." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

## IV. Discussion

### A. Double Jeopardy

Petitioner asserts that he is entitled to habeas relief because his convictions for felony murder and the predicate felony of assault with intent to rob while armed violate the Double Jeopardy Clause of the Fifth Amendment. Respondent contends that habeas relief is not warranted on this claim because the state appellate court granted relief on this issue and vacated Petitioner's conviction and sentence for assault with intent to rob while armed. This Court agrees. The record shows that the Michigan Court of Appeals has vacated Petitioner's conviction and sentence for assault with intent to rob while armed, which was the predicate felony for his felony murder conviction. *People v. Brooks*, 2007 Mich. App. LEXIS 1018, at *1 (Mich. Ct. App. Apr. 17, 2007). This Court cannot grant any further relief. *See*, *Macon v. Davis*, 2009 U.S. Dist. LEXIS 4733, 22-23 ( E.D. Mich. Jan. 23, 2009).

## B. <u>Evidence Regarding Prior Guilty Plea</u>

Petitioner next claims that the trial court erroneously allowed the prosecutor to elicit testimony from him on cross-examination that he had pled guilty prior to trial and used his guilty plea hearing testimony against him. Petitioner asserts that such evidence was inadmissible under MICH. R. EVID. 410. Petitioner also argues that the prosecutor committed misconduct by introducing this evidence, as well as evidence of Petitioner's prior contacts with law-enforcement. Finally, he asserts that his trial counsel was ineffective for failing to object to this line of questioning. Respondent asserts that review of the claim is procedurally barred because of Petitioner's failure to make a contemporaneous objection, and that the claim does not state a cognizable ground for relief.

When these claims were presented to the Michigan Court of Appeals during Petitioner's direct appeal, the state court limited its review to whether "plain error" occurred:

> Defendant next argues that evidence of his prior guilty plea and evidence of his prior criminal history denied him a fair trial. Defendant did not object to the plea evidence at trial and in fact was the first party to elicit such evidence. He also failed to object to the evidence of his prior criminal history. Therefore, these issues are not preserved, *People v. Aldrich*, 631 N.W.2d 67 (Mich. App. 2001), and our review is limited to plain error affecting defendant's substantial rights, *People v. Ackerman*, 669 N.W.2d 818 (Mich. App. 2003). Defendant specifically argues that the plea evidence was inadmissible under MICH. R. EVID. 410(1). But that rule only prohibits admission of evidence of a plea of guilty that is later withdrawn. In this case, defendant did not withdraw his plea. The prosecution revoked the plea because defendant violated the terms of the plea agreement. Further, reversal is not warranted because defendant first referred to this evidence. As such, fairness entitled the prosecutor to introduce other statements defendant made at the plea proceeding. And, "error requiring reversal cannot be error to which the aggrieved party contributed by plan or negligence." *People v. Gonzalez*, 663 N.W.2d 499 (Mich. App. 2003).
>
> \*       \*       \*
>
> Defendant further argues that evidence of his criminal history was

9

> inadmissible under MICH. R. EVID. 404(b) and MICH. R. EVID. 609. Viewed in context, the challenged line of questioning was not intended to show defendant's bad character, contrary to MICH. R. EVID. 404(b), or to attack his credibility under MICH. R. EVID. 609. Rather, the prosecutor was attempting to rebut defendant's suggestion that he came forward with information about the charged offense as a concerned citizen. The prosecutor sought to show that defendant was instead attempting to "cut a deal" with the police, as he had done in the past. The prosecutor also sought to show that defendant was a streetwise person and it was not reasonable for him to believe that a gun would not be used to commit the planned offense. Thus, defendant has not shown plain error. Further, because defendant has not shown a plain evidentiary violation, he has not established that defense counsel was ineffective for failing to object to this evidence. Counsel is not required to make a meritless objection. *People v. Torres* (On Remand), (Mich. App. 1997).

*Brooks, supra,* at * 3-6.

Federal habeas relief may be precluded on claims that a petitioner has not presented to the state courts in accordance with the state's procedural rules. *Wainwright v. Sykes*, 433 U.S. 72, 85-87(1977). Such a procedural default occurs when a petitioner fails to comply with a state procedural rule, the rule is relied upon by the state courts, and the procedural rule is "adequate and independent." *White v. Mitchell*, 431 F.3d 517, 524 (6th Cir. 2005). Procedural default may be excused where the petitioner demonstrates cause and prejudice for his failure to comply with the state procedural rule, or when a petitioner establishes that failing to review the claim would result in a fundamental miscarriage of justice. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Combs v. Coyle*, 205 F.3d 269, 274 (6th Cir. 2000).

Petitioner's claim that evidence concerning his guilty plea testimony was improperly admitted and his claim of prosecutorial misconduct were procedurally defaulted by virtue of his failure to make a contemporaneous objection in the trial court which resulted in appellate review under the more restrictive "plain error" standard of review. It is

well-established that the Michigan Court of Appeals' application of plain-error review constitutes the invocation of an independent and adequate procedural rule that bars federal review of the merits of his claim absent a showing of "cause and prejudice." *Fleming v. Metrish*, 556 F.3d 520, 524 (6th Cir. 2009). Accordingly, review of Petitioner's second claim is barred absent a showing of cause and prejudice.

Petitioner has not demonstrated cause to excuse his default. Petitioner asserts that his trial counsel was ineffective for failing to make a contemporaneous objection to the admission of this evidence. A showing of ineffective assistance of counsel can demonstrate cause to excuse a procedural default. *Edwards v. Carpenter*, 529 U.S. 446, 451-52 (2000). However, counsel cannot be deemed to have been ineffective for failing to challenge evidence under state law where the state court found that the evidence was, in fact, admissible. In such cases, an objection would have been futile. *See McQueen v. Scroggy*, 99 F.3d 1302, 1328 (6th Cir. 1996). Here, Petitioner alleges that evidence about his prior plea testimony was inadmissible under Mich. R. Evid. 410, but the state court found that rule did not operate to bar admission of the evidence in the circumstances of Petitioner's case. Because Rule 410 is based on state law, and the state court's construction of the rule, and how it applies, cannot be second-guessed by this court, Petitioner cannot show that his counsel performed deficiently by failing to object to the disputed evidence. *See Adams v. Smith*, 280 F.Supp.2d 704, 721 (E.D. Mich. 2003).

Petitioner does not accept the premise that his objection to the guilty plea evidence is only a matter of state law. He asserts that his evidentiary objection has federal dimension, and this Court is therefore not bound by the state court determination that the evidence was admissible. It is true that MICH. R. EVID. 410 is nearly identical to, and was

11

taken from, FED. R. EVID. 410 and FED. R. CRIM. P. 11(e)(6). Both the federal and state versions of the rule derive from "the inescapable truth that for plea bargaining to work effectively and fairly, a defendant must be free to negotiate without fear that his statements will later be used against him." *United States v. Herman*, 544 F.2d 791, 796 (5th Cir. 1977). The most significant factor in the federal rule's adoption was the need for free and open discussion between the prosecution and the defense during attempts to reach a compromise. See Comm. on Rules of Practice and Procedure, Judicial Conf. of the U.S., Preliminary Draft of Proposed Amendments, 77 F.R.D. 507, 534 (1978). Congress, when it considered this provision, suggested that absent such a shield the possibility of self-incrimination would "discourage defendants from being completely candid and open during plea negotiations . . . ." H.R.Rep.No.94-247, 94th Cong., 1st Sess. 7 (1975) U.S.Code Cong. & Admin.News 1975, at pp. 674, 679.

The rules are clearly founded on strong and sound policy considerations. But Petitioner cites no authority, and no authority appears to exist, that stands for the proposition that the rule is also necessitated by some constitutional provision. The mere fact that federal courts have the same evidentiary rule does not give it constitutional dimension, nor does it mean that this court is free to interpret the state rule differently than the state court did. *See, e.g., Bal v. McKee*, 2010 U.S. Dist. LEXIS 15911 (W.D. Mich. Feb. 23, 2010) ("The Federal Rules of Evidence do not apply to the state courts. The *Huddleston* decision merely interpreted Federal Rule of Evidence 404(b); it in no way indicated that the basis of its decision was constitutional or applicable to the state courts.")

Petitioner points to *Kercheval v. United States*, 274 U.S. 220 (1927), to support his claim. It is true that the evidentiary principle expressed by FED. R. EVID. 410 was

recognized in that case. But *Kercheval* did not purport to create a constitutionally-based evidentiary rule. The federal evidentiary rule announced in *Kercheval* was based on the Court's survey of the state of evidentiary law at the time and not on any perceived constitutional concern: "We have cited all the decisions, state and federal, which have come to our attention, that pass on the question here presented. The small number indicates that in this country it has not been customary to use withdrawn pleas as evidence of guilt. . . . We think the weight of reason is against the introduction in evidence of a plea of guilty withdrawn on order of court granting leave and permitting the substitution of a plea of not guilty." *Kercheval,* 274 U.S. at 225. Accordingly, *Kercheval* does not obligate the State of Michigan to interpret Rule 410 in any particular way.

Here, the Michigan Court of Appeals interpreted MICH. R. EVID. 410 to be inapplicable to cases in which a guilty plea is "revoked" because of the defendant's lack of performance, rather than "withdrawn." This interpretation of state evidentiary law and its application to this case, is binding. *Miskel v. Karnes*, 397 F.3d 446, 453 (6th 2005). In any event, there is some support for this distinction between a defendant who successfully moves to withdraw his plea and one who has it revoked due to his non-performance. *United States v. Arroyo-Angulo*, 580 F.2d 1137, 1149 (2d Cir. 1978) ("In view of Arroyo's blatant breach of the cooperation arrangement with the Government, to prohibit the introduction of his admissions would make a mockery of the investigative processes employed to secure evidence of serious crimes."); *United States v. Davis*, 617 F.2d 677, 685 (D.C. Cir. 1979) ("Excluding testimony made after and pursuant to the agreement would not serve the purpose of encouraging compromise. Indeed, such a rule would permit a defendant to breach his bargain with impunity: he could renounce the agreement and

return to the status quo ante whenever he chose, even though the Government has no parallel power to rescind the compromise unilaterally."); *c.f. United States v. Grant*, 622 F.2d 308, 315 (8th Cir. 1980).

Because the Michigan Court of Appeals determined that the disputed evidence was admissible under Michigan law, this Court must also defer to that determination in resolving petitioner's ineffective assistance of counsel claim. *See Brooks v. Anderson*, 292 Fed. Appx. 431, 437-38 (6th Cir. 2008).  For the same reason, Petitioner's counsel was not ineffective for failing to object on prosecutorial misconduct grounds.  A prosecutor may rely in good faith on evidentiary rulings made by the state trial judge and make arguments in reliance on those rulings.  *Webb v. Mitchell*, 586 F.3d 383, 397 (6th Cir. 2009).  Petitioner therefore, has not demonstrated cause to excuse his procedural default.

Likewise, Petitioner has not demonstrated prejudice.  "Prejudice, for purposes of procedural default analysis, requires a showing that the default of the claim not merely created a possibility of prejudice to the defendant, but that it worked to his actual and substantial disadvantage, infecting his entire trial with errors of constitutional dimensions." *Jamison v. Collins*, 291 F.3d 380, 388 (6th Cir. 2002) (*citing United States v. Frady*, 456 U.S. 152, 170-71).

Here, the admission of Petitioner's guilty plea testimony did not work to his actual and substantial disadvantage.  Petitioner's defense at trial amounted to an assertion that he abandoned the robbery and was merely present when the crime was committed.  At least that was the thrust of his direct-examination testimony.  But on cross-examination, the prosecutor undermined this defense by eliciting from Petitioner testimony that essentially conceded guilt under an aider-and-abettor theory.

14

Petitioner admitted on cross-examination that he was not merely present, but that "all I was suppose to be was a look-out" while the victim was robbed at gunpoint. T III, at 111-115. Petitioner admitted that he donned a ski-mask and helped to "scope out" the victim. Id. at 116. Petitioner admitted that he could have walked home, but chose instead to follow Howard down the alley. Id. at 117. He admitted that his purpose in walking down the alley was to rob Clark, and that he knew Howard would use the gun to rob the victim. Id. at 120. Petitioner admitted that after the shooting he did not aid the victim in any way, but received the gun from Howard and gave it back to Edwards. Id. at 135-137. In one particularly devastating exchange, Petitioner essentially admitted that his actions led to the victim's death:

> Q: . . . you made a choice?
>
> A: Yes.
>
> Q: And you realize that your choice led to a man being brutally killed, left to die in the snow?
>
> A: Yes.
>
> Q: Your choice led to his death?
>
> A: Yes.

Id. at 132.

Under Michigan law, a defendant is guilty of felony-murder under an aiding-or-abetting theory if he: (1) performed acts or gave encouragement that assisted the commission of the killing of a human being, (2) with the intent to kill, to do great bodily harm, or to create a high risk of death or great bodily harm with knowledge that death or great bodily harm was the probable result, (3) while committing, attempting to commit, or

15

assisting in the commission of the predicate felony. *People v. Carines*, 597 N.W.2d 130 (1999). A number of cases have held that a defendant's participation in an armed robbery, while either he or his co-defendants were armed with a loaded firearm, manifested a wanton and reckless disregard that death or serious bodily injury could occur, to support a finding that the defendant acted with malice aforethought, so as to support a conviction for felony-murder on an aiding and abetting theory. *See Hill v. Hofbauer*, 337 F. 3d 706, 719-20 (6th Cir. 2003)(intent for felony murder "can be inferred from the aider and abettor's knowledge that his cohort possesses a weapon."); *Harris v. Stovall*, 22 F. Supp. 2d 659, 667 (E.D. Mich. 1998); *Redmond v. Jackson*, 295 F. Supp. 2d 767, 774 (E.D. Mich. 2003).

Petitioner's concessions on cross-examination virtually conceded guilt. While the prosecutor went on to use Petitioner's guilty plea testimony to attack his credibility by comparing it to the inconsistent testimony he gave at his co-defendants' trial, the damage had already been done. The prosecutor had presented an eyewitness who testified that she saw Petitioner take the second shot at the victim, and Petitioner - perhaps in an effort to avoid guilt as a principal - essentially admitted to his guilt as an aider and abettor. It was Petitioner's own testimony made at his own trial that ensured his conviction, with or without the use of his prior testimony at the guilty plea hearing. Accordingly, the admission of Petitioner's guilty plea testimony did not work to his actual and substantial disadvantage, infecting his entire trial with errors of constitutional dimensions.

Because Petitioner had not shown cause or prejudice to excuse the procedural default of his claim, it cannot provide a basis for granting habeas relief.

### C. Illegal Arrest

Finally, Petitioner claims that that his statements to the police were the product of

16

an illegal arrest in violation of the Fourth Amendment.

When "the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Stone v. Powell*, 428 U.S. 465, 482 (1976). For a "full and fair" opportunity to have existed, the state must have provided a mechanism for raising the claim and presentation of the claim must not have been frustrated by a failure of that mechanism. *Gilbert v. Parke*, 763 F.2d 821, 823 (1985) (*citing Riley v. Gray*, 674 F.2d 522, 526 (6th Cir. 1982)). Michigan provides such a mechanism for challenging the constitutionality of an arrest before or during trial. *People v. Ferguson*, 135 N.W.2d 357, 358-59 (Mich. 1965). Petitioner had a full and fair opportunity for presentation of his issue in state court. Therefore, this Court is not required to address the substantive merits of Petitioner's Fourth Amendment claim.

## VI. Certificate of Appealability

A petitioner must receive a certificate of appealability ("COA") in order to appeal the denial of a habeas petition for relief from either a state or federal conviction. 28 U.S.C. §§ 2253(c)(1)(A), (B). A court may issue a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a federal district court rejects a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). "A petitioner satisfies this standard by demonstrating that jurists

of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003)(citation omitted).  In applying this standard, a district court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the petitioner's claims. *Id*. at 336-37.  The Court concludes that jurists of reason would not find the Court's assessment of Petitioner's claims debatable or wrong. The Court thus declines to issue Petitioner a certificate of appealability.

## VII.  Conclusion

For the reasons stated above, the state courts' rejection of Petitioner's claims did not result in a decision that was contrary to Supreme Court precedent, an unreasonable application of Supreme Court precedent, or an unreasonable determination of the facts. Accordingly, the petition for a writ of habeas corpus is **DENIED.**

## VI.  ORDER

Based upon the foregoing, IT IS ORDERED that the petition for a writ of habeas corpus is **DENIED WITH PREJUDICE.**

IT IS FURTHER ORDERED That a certificate of appealability is **DENIED.**

IT IS FURTHER ORDERED that petitioner is **GRANTED** leave to appeal *in forma pauperis.*


                    s/Gerald E. Rosen
                    Chief Judge, United States District Court

Dated:  January 19, 2011

I hereby certify that a copy of the foregoing document was served upon counsel of record on January 19, 2011, by electronic mail and upon Julian Brooks, #474611, Ionia Maximum Correctional Facility, 1576 W. Bluewater Highway, Ionia, MI 48846 by ordinary mail.

                    s/Ruth A. Gunther
                    Case Manager